```
           IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND
```

316 CHARLES, LLC                  :

                                                 :

   v.                             :  Civil Action No. DKC 21-0787

                                                 :

LIBERTY MUTUAL INSURANCE
COMPANY, et al.                   :

                                                 :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this insurance case is a motion for leave to file an amended complaint filed by Plaintiff 316 Charles, LLC ("Cazbar"). (ECF No. 26). The issues have been fully briefed, and the court now rules, no hearing being necessary. Local Rule 105.6. For the following reasons, the motion will be granted and the case will be remanded to state court.[1]

**I.  Background**

The relevant factual background in this case is set out in a prior opinion. (ECF No. 16, at 1-6); *316 Charles, LLC v. Liberty Mut. Ins. Co.*, No. 21-cv-0787-DKC, 2022 WL 228010, at *1-2 (D.Md. Jan. 26, 2022). In short, Cazbar owns a Turkish restaurant in Baltimore that was damaged in a rainstorm in August 2020. Its

---

[1] The parties recently filed a joint motion to modify the scheduling order. (ECF No. 39). Given the impending remand to state court, and the need to serve the new defendant, any adjustment of the schedule will be for the state court.

insurance claim was denied by Defendant Ohio Security Insurance Company ("Ohio Security").

Cazbar filed this suit in the Circuit Court for Baltimore City in February 2021, asserting claims for breach of contract and lack of good faith against Ohio Security and Liberty Mutual Insurance Company ("Liberty Mutual"). (ECF No. 4, at 1, 19-20).[2] Ohio Security and Liberty Mutual timely removed to this court in March 2021. (ECF Nos. 1, ¶ 2; 4-2, at 1). In April, Liberty Mutual moved to have the claims against it dismissed and Cazbar moved, prior to discovery, for partial summary judgment. (ECF Nos. 7; 11). In January 2022, this court granted Liberty Mutual's motion because it was not a party to Cazbar's insurance contract and dismissed the claims against it. (ECF Nos. 16, at 10-14; 17 ¶ 2). Cazbar's motion was denied because it had not pointed to undisputed facts that entitled it to judgment as a matter of law. (ECF No. 16, at 18).

Apparently disturbed by potential weaknesses in its case against Ohio Security, Cazbar moved for leave to file an amended complaint on March 14, the deadline for doing so. (ECF No. 26; see ECF No. 18). It seeks to add alternative claims against a new defendant, Olson, Inc. ("Olson"), the insurance broker that

---

[2] The court's prior opinion in this case mistakenly stated that the case was originally filed in the Circuit Court for Baltimore County. (ECF No. 16, at 6).

2

allegedly advised Cazbar to purchase the insurance policy at issue. (ECF No. 26-1, ¶¶ 6-10). Joining Olson would destroy diversity jurisdiction because it and Cazbar are residents of Maryland. (*See id.*, ¶¶ 11, 13). Ohio Security opposed and Cazbar replied. (ECF Nos. 33; 35).

**II.  Analysis**

Where a plaintiff seeks in an action removed on diversity grounds to amend its complaint by joining a non-diverse party, three rules apply.  Rule 15 governs complaint amendments. A plaintiff may amend as a matter of course for a period of time, after which it must obtain "the opposing party's written consent or the court's leave" to amend.  Fed.R.Civ.P. 15(a)(2).  Rule 15(a)(2) provides that courts "should freely give leave [to amend] when justice so requires[,]" and commits the matter to the discretion of the district court.  *See Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011).

Where a plaintiff seeks to add a defendant who is not indispensable to the suit, Rule 20 governs.  Joinder under Rule 20 requires: (1) that the right to relief asserted against the new defendant "arise out of the same transaction, occurrence, or series of transactions or occurrences" as those already asserted against existing defendants, and (2) that "any question of law or fact common to all defendants will arise in the action."  Fed.R.Civ.P. 20(a)(2).

Application of Rules 15 and 20 must be informed by 28 U.S.C. § 1447(e). *See Liverpool v. Caesars Balt. Mgmt. Co.*, No. 21-cv–510-JKB, 2021 WL 5909718, at *2 (D.Md. Dec. 14, 2021) (urging "greater caution" where 1447(e) applies). Section 1447(e) states that, "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." "[T]he actual decision on whether or not to permit joinder of a defendant under these circumstances is committed to the sound discretion of the district court[.]" *Mayes v. Rapoport*, 198 F.3d 457, 462 (4th Cir. 1999). The outcome is not controlled by the Rule 15 or 20 analyses and requires the district court to "balance the equities." *See id.*, at 462-63 (Rule 19). In exercising its discretion, a district court is entitled to consider "all relevant factors, including: the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether the plaintiff has been dilatory in asking for amendment, whether the plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities." *Id.*, at 462 (quotation omitted).

Ohio Security does not squarely argue that Cazbar's motion should be denied on Rule 15 grounds. To the extent it does so, its Rule 15 arguments overlap entirely with its Section 1447(e) arguments and will be addressed there. Ohio Security also does

little to attack Cazbar's proposed amended complaint on Rule 20 grounds, although the Rule 20 elements are relevant to whether the Section 1447(e) analysis is satisfied.

**A.    Cazbar's Purpose**

Cazbar's purpose in seeking leave to amend is to assert "substantive claim[s]" against Olson. *Woods v. AlliedBarton Sec. Servs. LLC*, No. 11-cv-2831-CCB, 2012 WL 439694, at *3 (D.Md. Feb. 2, 2012). His proposed claims support joinder under Rule 20 because they "arise out of" the same occurrence as those already asserted against Ohio Security, and share at least one common question of law with those claims. "Courts liberally construe the [former] and find that claims arise from the same transaction or occurrence if they have a logical relationship to one another." *Montessori Society of Central Md., Inc. v. Hicks*, No. 19-cv-2358-DKC, 2019 WL 6117422, at *3 (D.Md. Nov. 18, 2019) (internal quotations and citation omitted). Cazbar's claims against Olson, which are described in detail below, arise out of Cazbar's purchase of the insurance policy already in question. The claims are pleaded in the alternative to those pleaded against Ohio Security. Whether Ohio Security or Olson is liable (if either is) turns on a single legal determination – whether Cazbar's damages are covered by its insurance policy. If they are, Cazbar maintains that Ohio Security is liable. If they are not, it contends that Olson is liable.

5

In addition, Ohio Security cannot show that Cazbar's claims are without a "glimmer of hope" on the merits. *Mayes*, 198 F.3d at 466. Ohio Security attempts to do so through the doctrine of fraudulent joinder. This can be "the dispositive factor" when determining whether to allow joinder of a non-diverse party. *Id.*, 463. One way for a removing party to establish fraudulent joinder is to show that there is "no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court[.]" *Id.*, at 464 (quotation omitted). This is a "heavy" burden; "the defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor." *Id.* (quotation omitted).

Cazbar seeks to assert three claims against Olson for negligence, breach of contract, and breach of fiduciary duty. (ECF No. 26-1, at 27-26). As Defendant rightly notes, the allegations underlying each cause of action are essentially identical, (ECF No. 33, at 7), and provide little factual detail. Cazbar alleges that it "engaged Olson to serve as its insurance advisor and producer" approximately ten years ago. (ECF No. 26, ¶ 147). It contracted with Olson to "analyze Cazbar's risks and exposures, alert Cazbar of those risks, advise Cazbar on how to protect itself from such risks through available insurance coverage, and to procure insurance for Cazbar to cover its risks[.]" (*Id.*, ¶ 161).

Olson promised to serve as Cazbar's "business consultant," not simply to take insurance orders. (*Id.*, ¶ 163).

Cazbar also alleges in the alternative that Olson served as its "trusted advisor" and the two companies developed a "special relationship" which heightened Olson's duty of reasonable care and created a fiduciary relationship. Cazbar grounds its allegations of a special and fiduciary relationship in Olson's position as an insurance broker, its "self-proclaimed expertise in matters of commercial and restaurant insurance," its encouragement of Cazbar's reliance on its special knowledge and expertise, and its conduct "counsel[ing] Cazbar concerning the complex and specialized insurance it was purchasing and assur[ing] Cazbar that it was the proper entity to purchase insurance for" the restaurant. (ECF No. 26-1, ¶ 148).

Cazbar contends that Olson was therefore obligated to identify risks to the restaurant, at least in part by verifying the property's condition, communicate the risks to Cazbar, and procure insurance for Cazbar that covered the risks. (ECF No. 26-1, ¶¶ 149, 161, 177). Olson allegedly breached those duties by failing to inspect the condition of the restaurant, failing to bring storm-related risks to Cazbar's attention, failing to procure adequate insurance, and failing to advise Cazbar that its insurer would deny coverage for the storm damage at issue. (*Id.*, ¶¶ 152-54, 168-70, 180-82). Should it be found that Cazbar in

7

fact was not insured for the relevant damage, it maintains that Olson is liable for its damages.  (*Id.*, ¶¶ 155-56, 170-71, 182-83).

Resolving all issues of fact and law in Cazbar's favor, Ohio Security has not met its burden to show that there is no possibility Cazbar would be able to establish at least one of its three claims (negligence, breach of contract, and breach of fiduciary duty) against Olson in Maryland court.  "Under Maryland law, it is 'generally accepted that when an insurance broker is employed to obtain a policy that covers certain risks and the broker fails: (1) to obtain a policy that covers those risks, and (2) to inform the [insured] that the policy does not cover the risks sought to be covered, an action may lie against the broker, either in contract or in tort.'"  *Goucher College v. Continental Cas. Co.*, 541 F.Supp.3d 642, 649 (D.Md. 2021) (quoting *Int'l Bhd. of Teamsters v. Willis Corroon Corp. of Md.*, 369 Md. 724, 737 (2002)).

Ohio Security attacks all three claims by arguing that Olson did not have the duties that Cazbar alleges.  It also argues that Cazbar cannot plead tort and contract claims together and that the statute of limitations has run.

1.   **Breach of Contract**

Ohio Security argues that Cazbar failed to allege the formation and existence of a contract between Cazbar and Olson.

Cazbar alleges that "Olson contracted with Cazbar" to provide the services described above. (ECF No. 26-1, ¶¶ 161-65). That is enough. Ohio Security points to no authority for the proposition that the contract's formation or existence needs to be pleaded more specifically. Cazbar also is not required to attach a contract to its claim. If that were true, Maryland could not recognize oral or implied contracts, which it does. Ohio Security does not contend that the Statute of Frauds applies.

## 2. Negligence

Ohio Security also fails to meet its burden regarding Cazbar's negligence claim. It does not argue that the duties Cazbar alleges cannot arise from a special broker relationship. It merely contends that Cazbar has not pleaded a special relationship. It cites *Sadler v. Loomis Company*, which identifies two ways to establish such a relationship. First, a special relationship "may be shown when an insurance agent or broker holds himself or herself out as a highly skilled insurance expert, and the insured relies to his detriment on that expertise." 139 Md.App. 374, 392 (D.Md. 2001). Second, "[a] special relationship may also be demonstrated by a long term relationship of confidence, in which the agent or broker assumes the duty to render advice, or has been asked by the insured to provide advice, and the adviser is compensated accordingly, above and beyond the premiums customarily earned."

9

*Id.* (citing Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 46:61, at 46-91, 97 (3d. ed. 1997)).

Ohio Security argues that Cazbar had to, and did not, allege that Olson received "compensation, above the customary premium paid, for expert advice[.]" (ECF No. 33, at 10). *Sadler* does not say that. Not only does one of its tests for a special relationship include no mention of compensation, but nothing suggests compensation is dispositive in the other test. If anything, the language in *Sadler* suggests a court should look to the totality of the circumstances. Cazbar also alleges that Olson received a "significant commission." (ECF No. 26-1, ¶ 9). While it's not clear who paid that commission, Ohio Security has not shown that Cazbar cannot establish its negligence claim.

### 3. Breach of Fiduciary Duty

Ohio Security fares no better on the fiduciary duty claim. It contends that Maryland "does not permit plaintiffs to advance a breach of fiduciary duty claim as a stand-alone cause of action." *Fid. &. Guar. Life Ins. Co. v. Sharma*, No. 17-cv-1508-RDB, 2019 WL 1430100, at *7 (D.Md. Mar. 29, 2019) (citing *Kann v. Kann*, 344 Md. 689, 520-21 (1997)). That is wrong. That proposition was mistakenly drawn from language in *Kann* rejecting an "omnibus tort for the redress of breach of fiduciary duty," as the Maryland Court of Appeals clarified in *Plank v. Cherneski*. 469 Md. 548, 597-600

(2020). A breach of fiduciary duty by an agent can be actionable as an independent cause of action. *Id.*

### 4. Pleadings Claims in Contract and Tort

Ohio Security contends that when the Maryland Court of Appeals stated in *Willis Corroon Corporation* that an insurance broker could be sued for failure to procure "either in contract or in tort," it meant that a plaintiff had to choose and could not assert contract and tort claims together. Even if the court thought this argument had merit, it is required to resolve all legal questions in Cazbar's favor and the quoted language certainly does not compel Ohio Security's reading. The interpretation also appears wrong on its face. The court likely meant only that that both types of claims are available. It even suggested that the plaintiff in that case could have pleaded claims for negligence and breach of contract. *Willis Corron Corp.*, 369 Md. at 727 n.1. In addition, this court has allowed plaintiffs to bring both tort and contract claims against insurance brokers. *Goucher College*, 541 F.Supp.3d at 646, 648-50.

### 5. Statute of Limitations

Ohio Security's statute of limitations argument is also meritless. Maryland has a three-year limitations period for civil claims. Md. Code Ann., Cts. & Jud. Proc. § 5-101. Breach of contract claims accrue, and the limitations period begins to run, at the time of breach. *J.E. Dunn Constr. Co. v. S.R.P. Dev. Ltd.*

11

*P'ship*, 115 F.Supp3d 593, 612 (D.Md. 2015).  Negligence claims accrue when breach and damages have occurred.  *State Auto. Mut. Ins. Co. v. Lennox*, 422 F.Supp.3d 948, 963 (D.Md. 2019).  Fiduciary duty claims are subject to the "continuation of events" doctrine, under which claims typically do not accrue until the relationship ends and the plaintiff "ha[s] knowledge of facts that would lead a reasonable person to undertake an investigation that, with reasonable diligence, would [] reveal[] wrongdoing."  *See Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 173-74 (2004).  For all three types of claims, the discovery rule can delay accrual to the time when the plaintiff first learns of the necessary events. *See Besler v. Wilmington Tr. Co.*, 348 F.Supp.3d 473, 483 (D.Md. 2018) ("In determining the date of accrual, Maryland applies the 'disovery rule.'" (citation omitted)).

Here, Cazbar alleges that the insurance policy in question had a one-year term.  Any breach of duty by Olson therefore would not have occurred until May 2020 when Cazbar purchased the policy. Any injury to Cazbar would not have occurred any earlier than August 2020, when its building was damaged.  It's possible that the injury did not occur, or that the continuation of events and discovery rules would delay accrual, until September 2020 when Ohio Security rejected Cazbar's claim.  Cazbar moved for leave to amend in March 2022, well within the three-year limitations period for any of these dates.

There is simply too little to conclude that Cazbar seeks to join Olson simply to destroy diversity jurisdiction.

**B.     Dilatory Nature of Cazbar's Motion**

Cazbar's motion is not dilatory.  It sought leave to join Olson within the timeframe set out in the court's scheduling order, within weeks of the court's resolution of its partial motion for summary judgment, and before significant discovery was exchanged. Cazbar did not oppose removal in the first instance and did not seek to add a non-diverse defendant "immediately after removal," conduct that would ordinarily signal that "the amendment sought is for the specific purpose of avoiding federal jurisdiction."  *See Mayes*, 198 F.3d at 463; *Hirschman v. Wachovia Bank, N.A.*, No. 11-cv-1945-DKC, 2011 WL 6047091, at *3 (D.Md. Dec. 5, 2011).  Ohio Security's attempts to frame Cazbar's motion as significantly delayed because it came more than a year after this suit was filed are unpersuasive.  This case "has progressed little since [removal.]"  *Hirschman*, 2011 WL 6047091, at *4.  Cazbar filed its motion for partial summary judgment promptly and filed the pending motion promptly after the summary judgment motion was resolved. That a year passed in between owes to the time necessary for the court to consider the earlier motions, not to any delay by Cazbar.

That Cazbar could have brought its claims against Olson from the outset of the lawsuit does not mean that its motion is dilatory or undermine the finding above that Cazbar's true purpose is to

13

bring valid claims against Olson.  Cazbar's decision not to join Olson at the outset likely reflects confidence in its claim against Ohio Security, informed perhaps by alleged assurances from Olson.  Moreover, Olson was not and is not indispensable to Cazbar's suit against Ohio Security.  Its decision to join Olson in March merely reflects the fact that it was confronted with potential weaknesses in its case against Ohio Security.

### C. Injury to Cazbar from Denial of Motion

Cazbar might be injured if its request to join Olson is denied.  It has an interest in avoiding "parallel lawsuits in federal and state court, which may spawn inconsistent results and inefficient use of judicial resources." *Mayes*, 198 F.3d at 463 (quotation omitted).  As noted above, Cazbar's claims against Ohio Security and Olson are pleaded in the alternative.  Whether Ohio Security or Olson is liable turns on whether Cazbar's damages are covered by its insurance policy.  If Cazbar cannot join Olson in this suit, it runs the risk that different courts will reach different resolutions of that critical question.  Were the court hearing the case against Olson to find Cazbar's damages covered by the policy and the court hearing the case against Ohio Security to find them not covered, Cazbar could be left without a remedy.

### D. Balance of Equities

The balance of the equities favors granting Cazbar leave to amend its complaint.  While Ohio Security has an "interest in

14

keeping the action in federal court," *Mayes*, 198 F.3d at 463 (quotation omitted), all other factors weigh in Cazbar's favor. The court finds that it seeks leave to amend to bring valid claims against Olson, not to destroy diversity jurisdiction, that its actions are not dilatory, and that it might be substantially injured if it cannot join Olson.  Moreover, leave to amend should be "freely give[n] [] when justice so requires," Fed.R.Civ.P. 15(a)(2), and permissive joinder should be allowed where Rule 20 is satisfied and it would "promote trial convenience and expedite the final determination of disputes," *Saval v. BL Ltd.*, 710 F2d 1027, 1031 (4th Cir. 1983).  Rules 15 and 20 and Section 1447(e) all support Cazbar's position.

**III. Conclusion**

For the foregoing reasons, Cazbar's motion for leave to file an amended complaint will be granted.  Olson is a non-diverse party and its joinder destroys subject matter jurisdiction.  The case will be remanded to the Circuit Court for Baltimore City and Cazbar can serve process on Olson pursuant to Maryland state procedure. A separate order will follow.

                                          /s/
                              DEBORAH K. CHASANOW
                              United States District Judge